IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:98CR351-2 |
| | ) | |
| CHARLES EDWARD JOHNSON, II | ) | |

**MEMORANDUM ORDER**

This matter is before the Court on Defendant Charles Edward Johnson, II's pro se Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) [Doc. #202]. In support of his motion, he relies on his health, the impact of COVID-19 on his incarceration, and the youthful age (nineteen years old) at which he committed his underlying offense. He requests appointment of counsel to assist with the motion. For the reasons stated below, his motion is denied.

As an initial matter, the Sixth Amendment right to counsel does not extend beyond the first appeal of right. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). In exceptional circumstances, due process may require appointment of counsel in certain postconviction proceedings, but Johnson's instant motion is not among those. See United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (denying appointment of counsel for § 3582(c) motion to reduce sentence). Cf. 18 U.S.C. § 3006A(a)(2)(B) (authorizing the court to provide counsel to a financially eligible person seeking relief under 28 U.S.C. §§ 2241, 2254, or 2255 when "the

interests of justice so require"). Accordingly, his request for appointment of counsel is denied.

Johnson is presently serving a thirty-six-month term of imprisonment imposed upon revocation of his supervised release. "The court may not modify a term of imprisonment once it has been imposed except", as is relevant here, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier". 18 U.S.C. § 3582(c)(1)(A). The warden received and denied Johnson's request on August 20, 2021; therefore, he has complied with the statute's procedural requirements. And, in any event, recently the Fourth Circuit Court of Appeals held that "§ 3582(c)(1)(A)'s threshold requirement is non-jurisdictional and thus subject to waiver." United States v. Muhammad, 16 F.4th 126, 129 (2021).

However, Johnson must next meet his burden of showing extraordinary and compelling reasons warrant a sentence reduction, see 18 U.S.C. § 3582(c)(1)(A)(i), and this he has not done. See United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (finding "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A)," "empower[ing]" courts "to consider any extraordinary and compelling reason for release that a defendant might raise") (citation omitted); U.S. Sentencing Guideline § 1B1.13, Application n.1 (providing circumstances found to

be extraordinary and compelling) cited in McCoy, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants"); Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019) (explaining circumstances supporting compassionate release).

Forty-two-year-old Johnson claims that his health is failing him slowly due to incarceration as evidenced by his hypertension (for which he is prescribed medication) and purported heart failure. While the medical records that Johnson submitted confirm his hypertension, other medical issues, and medications, the records also reflect that Johnson is receiving care for his medical conditions. For example, in February 2021, he was treated at the hospital for syncope and collapse and discharged the same day after an ECG was performed. The following day, the physician at FCI Loretto ordered lab tests and a heart monitor for Johnson. In addition, when he submitted a request to staff on July 7, 2021 complaining of chest pains, numbness in his arm, and anxiety and requested medication for anxiety and iron, the physician responded the following day and instructed Johnson to alert staff immediately when he has chest pain and to arrange to be evaluated by his primary care physician for his anxiety and mental health medication, ordered labs to investigate Johnson's iron levels, and was prepared to order iron therapy if the labs demonstrated a deficiency as the doctor had apparently previously discussed with Johnson. He has also had an MRI of his brain in July 2021 which led to lab tests for Lyme disease and a neurology consult, and another ECG was performed in August 2021. Nothing before the Court

3

suggests that Johnson's medical conditions or the care he is receiving are extraordinary and compelling.

To the extent that Johnson relies on the risk that COVID-19 poses for him due to his health, heart conditions (possibly including hypertension) "can make you more likely to get severely ill from COVID-19." Centers for Disease Control and Prevention ("CDC"), COVID-19 People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Oct. 14, 2021). But, Johnson is fully vaccinated against COVID-19, as are 1,041 other inmates and 167 staff members at FCI McDowell where Johnson is presently housed, Fed. Bureau of Prisons ("BOP"), COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (updated Nov. 29, 2021). He is concerned with overcrowding, the "exceptional death possibility", and the variants. Yet, there are no inmates and one staff member reported as positive for COVID-19 at FCI McDowell, id., likely due in large part to the BOP's vaccination efforts at the facility. The "vaccines are effective and can reduce the risk of getting and spreading the virus that causes COVID-19", and they "continue to be highly effective at preventing hospitalization and death, including against" the Delta variant. See generally CDC, Benefits of Getting Vaccinated, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (updated Nov. 29, 2021). Thus, under these circumstances, COVID-19 is not an extraordinary and compelling reason for relief.

4

Johnson complains of the lockdowns and their impact on his access to mental health and rehabilitative programs. His frustration is understandable, but the Court is not in a position to question the BOP's determination that limited movement of inmates and programming hiatus could help stop the spread of COVID-19 in its facilities.

Johnson also cites research in support of his argument that his frontal lobe was not developed at the age of nineteen when he committed armed bank robbery, the offense underlying his 98CR351-2 case. He contends that he is now "more inclined to be responsible." Indeed, Johnson was nineteen years old at the time of the underlying offense. He was ultimately sentenced to 117 months' imprisonment followed by five years' supervised release. His supervised release began on November 2, 2007. A year and a half later, at the age of thirty, Johnson was charged with four counts of felony robbery with a dangerous weapon, seven counts of felony second degree kidnapping, three counts of felony breaking and entering, larceny after breaking and entering, obtaining property by false pretense, and first degree sexual offense. Although he told his probation officer that he knew law enforcement was looking for him and his probation officer instructed him to turn himself in, Johnson did not. Nevertheless, at some point he did go into custody. He was convicted in November 2009 of felony first degree kidnapping, two counts of felony robbery with a dangerous weapon, and felony conspiracy to commit robbery with a dangerous weapon for which he was sentenced to 98 to 127 months' imprisonment. He was also convicted of another felony conspiracy

5

to commit robbery with a dangerous weapon and second degree kidnapping for which he received a consecutive sentence of thirty-four to fifty-three months' imprisonment. The commission of these offenses led to the revocation of his federal supervised release and the imposition of the thirty-six-month sentence Johnson is presently serving. In sum, although Johnson was a teenager at the time of the underlying offense, he was thirty years old when he committed multiple felony offenses while on federal supervised release.

To his credit, though, Johnson has worked to better himself while in custody. In 2001, he earned his GED while in BOP custody. While in state custody, he took numerous undergraduate courses associated with the University of North Carolina's Center for Continuing Education. His sociology professors noted that he "clearly mastered the majority of the lessons . . . and received A's on most of them" and they enjoyed his insights, appreciated his efforts, described him as a pleasure to teach, and encouraged him to continue his education. He also completed programs through Vance-Granville Community College including commercial cleaning, economic literacy, employment readiness, and electricity and electronics. Additional courses include character education training, stress management, and anger management. These efforts and accomplishments are commendable and will serve Johnson well when he completes his term of imprisonment and reenters society. However, they are not alone extraordinary and compelling reasons for relief. Nor are they when combined with the other bases upon which Johnson relies. Because Johnson has not met his burden of showing

6

extraordinary and compelling reasons for relief, it is unnecessary to assess the factors from 18 U.S.C. § 3553(a).

For the reasons stated in this Memorandum, IT IS HEREBY ORDERED that Defendant Charles Edward Johnson, II's pro se Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) [Doc. #202] is DENIED.

This the 30th day of November, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge